IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GENE FINKE, )
)
        Plaintiff, )
)
v. ) Case No. 19-2056-DDC-KGG
)
THE ENSIGN GROUP, INC, *et al.*, )
)
        Defendants. )
_____ )

## **MEMORANDUM & ORDER DENYING MOTION TO AMEND**

Now before the Court is Plaintiff's Motion to Amend Complaint (Doc. 34), in which he requests leave to Amend his Complaint pursuant to Fed.R.Civ.P. 15 and D. Kan. Rule 15.1 to "insure that such pleading meets the requirements of Fed.R.Civ.P. 8 with respect to the claims of understaffing alleged against Defendants The Ensign Group, Inc., Ensign Services, Inc., Gateway Healthcare, Inc. and Maples Hills Healthcare, Inc." (collectively "the Ensign Defendants"). (Doc. 34, at 4.) Having reviewed the submissions of the parties, Plaintiff's motion is **DENIED**.

## **FACTUAL BACKGROUND**

Plaintiff was a resident of a licensed skilled nursing facility, Maple Hills Healthcare, Inc. doing business as Healthcare Resort of Shawnee in Overland Park,

Kansas (hereinafter "Maple Hills"). He alleges that he sustained "an avoidable fall" at Maple Hills on August 8, 2017, resulting in a left distal fibula fracture and medial malleolus fracture. (Doc. 1.) Defendants contend that Plaintiff's fall occurred "during physical therapy while performing gait training with assistance from the physical therapy staff," which operates independently from Maple Hills. (Doc. 36, at 1.) Defendants continue that Maple Hills' "nursing staff was not present during [Plaintiff's] alleged fall, and had no involvement with the care provided at the time of the alleged fall." (*Id.*)

Regardless of who was involved and/or at fault, Plaintiff had an operation on the left ankle fracture on August 9, 2017. (Doc. 1.) Thereafter, he became a resident of Post Acute Rehabilitation Hospital of Overland Park (hereinafter "the Rehab hospital") from approximately October 26, 2017, to October 30, 2017. (*Id.*)

Plaintiff also alleges that on October 27, 2017, Rehab hospital staff pinched his right leg while transferring him in a hoyer lift. According to Plaintiff, this "caused a hematoma and required surgical debridement and continuing wound care." (*Id.*) Plaintiff alleges permanent injury based on the conduct of Defendants.

The parties participated in a discovery conference with the undersigned Magistrate Judge on June 28, 2019, regarding a dispute with Plaintiff's discovery on issues related to nursing staffing at Maple Hills. The Ensign Defendants objected to the Requests regarding the alleged understaffing as "overbroad, unduly

burdensome, and sought documentation which was neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, among other things." (Doc. 36, at 2.)

According to Plaintiff, during the discovery conference, "Judge Gale expressed concern that Plaintiff's claims of understaffing related to the fall … were not insufficient [sic]." (Doc. 34, at 3.) According to Defendants,

> Judge Gale indicated the correlation between the alleged nurse staffing issues and the fall during physical therapy was not clear. He suggested plaintiff undertake depositions to establish whether any alleged nurse staffing issues had any impact on the physical therapy care provided to Mr. Finke. If this deposition testimony established a connection between these issues, Judge Gale suggested the discovery Requests could be reevaluated.

(Doc. 36, at 2.) Plaintiff contends that, following the discovery conference, it

> engaged in additional discussions with his retained experts in this matter to inquire whether more specific allegations could be made regarding the relationship of the understaffing at Defendants' facility, Healthcare Resort of Shawnee, and the injuries Plaintiff sustained while in their care and custody.

(Doc. 34, at 3-4.)

Plaintiff brings the present motion pursuant to Fed.R.Civ.P. 15 and D. Kan. Rule 15.1 "to insure that such pleading meets the requirements of Fed.R.Civ.P. 8 with respect to the claims of understaffing alleged against Defendants." (*Id.*, at 4.)

Because the deadline to amend has passed, Plaintiff also seeks leave to modify the scheduling order pursuant to Fed.R.Civ.P. 16. (*Id.*)

Defendants respond that the Motion to Amend "was filed almost two months after this deadline passed" and that "no depositions have been taken and no relevant written discovery has been exchanged between the parties since our conference call with Judge Gale." (Doc. 36, at 2.) Defendants continue that the motion "is being pursued in bad faith for the sole purpose of broadening the scope of discovery" and constitutes "tactical maneuvering by plaintiff … to avoid the suggestions of Judge Gale," which "would result in undue prejudice to the Ensign Defendants." (*Id.*, at 5.)

## **ANALYSIS**

Before the Court can engage in a Rule 15 analysis, it must analyze Plaintiff's requested amendment in the context of Fed.R.Civ.P. 16 because the deadline to amend pleadings in the original Scheduling Order expired on June 28, 2019 (Doc. 23, at 8), eight weeks before Plaintiff filed the present motion. Plaintiff must therefore first move the Court for an amendment to the Scheduling Order pursuant to Fed.R.Civ.P. 16.

Pursuant to Fed.R.Civ.P. 16, "[a] schedule may be modified only for good cause and with the judge's consent." If the Court determines that good cause has

been established, the Court then proceeds to determine if the Rule 15(a) standard has also been met.

> The advisory committee notes to this Rule provide: '[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension.' Fed.R.Civ.P. 16 advisory committee's note to 1983 amendment; *see also* **Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n**, 771 F.3d 1230, 1240 (10th Cir. 2014) ('In practice, this standard requires the movant to show the scheduling deadlines cannot be met despite [the movant's] diligent efforts.' (citation and internal quotation marks omitted)). 'Rule 16's good cause requirement may be satisfied, for example, if a plaintiff learns new information through discovery or if the underlying law has changed.' **Gorsuch**, 771 F.3d at 1240.
> 
> The district court exercises its sound discretion when deciding whether to modify a Scheduling Order. **Rimbert v. Eli Lilly & Co.**, 647 F.3d 1247, 1254 (10th Cir. 2011) (reviewing a district court's refusal to enter a new scheduling order for abuse of discretion). Despite this 'broad discretion in managing the pretrial schedule,' the Tenth Circuit has concluded that 'total inflexibility is undesirable.' **Summers v. Mo. Pac. R.R. Sys.**, 132 F.3d 599, 604 (10th Cir. 1997). Also, a scheduling order which produces an exclusion of material evidence is 'a drastic sanction.' *Id.*; *see also* **Deghand v. Wal-Mart Stores, Inc.**, 904 F. Supp. 1218, 1221 (D. Kan. 1995) ('While a scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril, rigid adherence to the . . . scheduling order is not advisable.' (citations and internal quotation marks omitted)).

***Little v. Budd Co.***, NO. 16-4170-DDC-KGG, 2018 WL 836292, at *3 (D. Kan. Feb. 13, 2018). "[T]he 'good cause' standard of Rule 16(b) 'focuses on the

diligence of the party seeking to modify the scheduling order,' not prejudice to the other party." ***Viper Nurburgring Record, LLC v. Robbins Motor Co., LLC***, No. 18-4025-HLT-KGG, 2018 WL 6078032, at *2 (D.Kan. Nov. 21, 2018) (quoting ***Manuel v. Wichita Hotel Partners***, No. 09-1244-WEB-KGG, 2010 WL 3861278, at *2 (D. Kan. Sept. 20, 2010)).

If good cause is established, the Court engages in analysis under Fed.R.Civ.P. 15(a), which provides that "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. . . ." The granting of an amendment is within the sound discretion of the court. *See* ***First City Bank, N.A., v. Air Capitol Aircraft Sales, Inc***., 820 F.2d 1127, 1132 (10th Cir. 1987). The United States Supreme Court has, however, indicated that the provision "leave shall be freely given" is a "mandate . . . to be heeded." ***Foman v. Davis***, 371 U.S. 178, 182 (1962). "In determining whether to grant leave to amend, this Court may consider such factors as undue delay, the moving party's bad faith or dilatory motive, the prejudice an amendment may cause the opposing party, and the futility of amendment." *Id*., at 182; *see also* ***Jarrett v. Sprint/United Mgmt. Co.***, No. 97–2487–EEO, 1998 WL 560008, at *1 (D. Kan. 1998).

Plaintiff acknowledges the eight weeks since the deadline to amend has passed, but states that "[t]his is the same eight (8) week time period in which

Plaintiff has been consulting with his retained experts to determine whether more specific allegations can be made to support his claim that understaffing at Healthcare Resort of Shawnee caused and contributed to his fall and injuries sustained as a result." (Doc. 34, at 7.) Plaintiff contends he "is now prepared to amend his Complaint and add additional allegations in this regard." (*Id*.)

Defendants respond that Plaintiff has asserted "no new theories of negligence … against defendants in [his] proposed Second Amended Complaint." (Doc. 36, at 4.) According to Defendants,

> Plaintiff is not seeking leave for purposes of modifying his underlying claims against defendants. Further, Plaintiff has conducted no new discovery and has taken no depositions since our conference call with Judge Gale. Indeed, the sole purpose of the proposed Second Amended Complaint is to add six paragraphs to make the alleged nurse staffing issues relevant and broaden the scope of discovery. Attempting to amend a Complaint for the sole purpose of making alleged understaffing relevant, without conducting any substantive discovery on the issue, constitutes bad faith and an improper purpose.

(*Id*., at 4-5.) Defendants also contend that the nurse staffing issues are "remote" and "would result in undue prejudice to the Ensign Defendants" as well as "additional expense by way of extensive discovery and expert retention regarding the alleged nurse staffing issues." (*Id*., at 5.)

There is no doubt that Plaintiff was aware of the facts at issue when he filed his original complaint, but failed to include them. Plaintiff does not contend that

7

he became aware of new facts through discovery or investigation. To the contrary, he concedes that he merely "engaged in additional discussions with his retained experts in this matter to inquire whether more specific allegations could be made regarding the relationship of the understaffing at Defendants' facility, Healthcare Resort of Shawnee, and the injuries Plaintiff sustained while in their care and custody." (Doc. 34, at 3-4.)

This is grounds for denial of the motion to amend under either Rule 16 or Rule 15. *See **Gorsuch, Ltd. B.C. v. Wells Fargo Nat. Bank Ass'n***, 771 F.3d 1230, 1240 (10th Cir. 2014) (stating that under Rule 16, it is appropriate to deny leave to amend where the "plaintiff knew of the underlying conduct but simply failed to raise [the] claims"); ***Las Vegas Ice and Cold Storage Co. v. Far W. Bank***, 893 F.2d 1182, 1185 (10th Cir. 1990) (holding that under Rule 15(a), "[w]here the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial"); ***Federal Ins. Co. v. Gates Learjet Corp.***, 823 F.2d 383, 387 (10th Cir. 1987) (stating that "courts have denied leave to amend where the moving party was aware of the facts on which the amendment was based for some time prior to the filing of the motion to amend."); ***Koch v. Koch Industries***, 127 F.R.D. 206, 210 (D. Kan. 1989) (holding that "[w]here the party seeking amendment knows or should have known of the facts upon which the

8

proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial.") (citations omitted).

This Court previously indicated that the causal relationship between the alleged nurse staffing issues and Plaintiff's fall during physical therapy was unclear. This concern was expressed in a discussion about Plaintiff's ability to establish the relevance of desired discovery. This perceived deficiency was based on the parties' proffer of facts in the case discovered to date. It was not based on a failure of pleading. It is undisputed that the Court suggested Plaintiff engage in depositions in an effort to establish a connection between alleged nurse staffing issues and the physical therapy care provided to Plaintiff. Plaintiff has not done so, but instead has filed the present motion.

Defendant concludes that if Plaintiff is able to establish a connection to nurse staffing issues through discovery, "broadening the scope of discovery may be appropriate at that time." (Doc. 36, at 5.) The Court agrees with this approach and hereby **DENIES** Plaintiff's motion (Doc. 34.).

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Amend (Doc. 34) is **DENIED**.

IT IS SO ORDERED.

Dated this 24th day of September, 2019, at Wichita, Kansas.

S/ KENNETH G. GALE
HON. KENNETH G. GALE
U.S. MAGISTRATE JUDGE