**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **GENE FINKE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 2:19-CV-02056** |
| **v.** | ) | |
| | ) | |
| **THE ENSIGN GROUP, INC.,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**DEFENDANTS THE ENSIGN GROUP, INC., ENSIGN SERVICES, INC., GATEWAY HEALTHCARE, INC., AND MAPLE HILLS HEALTHCARE, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE LAIRD WASHBURN'S ERRATA SHEET**</u>

The Ensign Group, Inc., Ensign Services, Inc., Gateway Healthcare, Inc., and Maple Hills Healthcare, Inc. (hereinafter "Defendants"), by and through their counsel of record, provide the following Response in Opposition to Plaintiff's Motion to Strike Laird Washburn's Rule 30(e) Errata Sheet (hereinafter "Plaintiff's Motion"):

<u>**INTRODUCTION**</u>

This is a medical malpractice case involving allegations that plaintiff fell during physical therapy while a resident at Maple Hills Healthcare. From the beginning, plaintiff has attempted to assert The Ensign Group, Inc., Ensign Services, Inc., and Gateway Healthcare, Inc. were somehow involved with the *clinical* operation and management of Maple Hills Healthcare. Allegations involving The Ensign Group, Ensign Services, and Gateway Healthcare have been plaintiff's sole focus for the 15 months this case has been on file. This includes multiple sets of interrogatories, requests for production of documents, requests for admissions, and the single deposition taken by plaintiff.

On February 7, 2020, plaintiff took Mr. Washburn's deposition remotely. (Ex. A, Deposition of Mr. Laird Washburn ("Washburn Depo.")).  Mr. Washburn was the administrator at Maple Hills Healthcare for a very short period of time in 2017. (Ex. A, Washburn Depo., at 7:10-22).  Among other things, Mr. Washburn was asked about the relationship between Ensign Services, Inc. and Maple Hills Healthcare during that timeframe. As discussed in more detail below, Mr. Washburn's testimony on this issue was equivocal and demonstrated clear confusion. Following his deposition, Mr. Washburn submitted an errata sheet attempting to clarify his confusion after his review of new evidence. (Ex. B, Mr. Washburn's Errata Sheet ("Washburn Errata")).

Plaintiff's Motion seeks to strike each and every errata sheet change made by Mr. Washburn.  With no basis for such allegations, plaintiff asserted on numerous occasions that Mr. Washburn's errata sheet changes were made "at the direction of counsel." *See* Doc. 65.  This is patently false.  *Counsel for Defendants were not involved, in any way, in the errata sheet changes made by Mr. Washburn.*  As set forth below, because the errata sheet changes concern issues over which the witness demonstrated confusion, and are based on new evidence, plaintiff's Motion should be denied.

## LEGAL AUTHORITY

Rule 30(e) permits a witness to review his deposition transcript and make changes "in form and substance."  Fed. R. Civ. P. 30(e)(1).  "The majority approach is that Rule 30(e) does not limit the types of changes a deponent may make to his or her deposition transcript."  Pepsi-Cola Bottling Co. of Pittsburgh v. Pepsico, Inc., 2002 WL 511506, at *2 (D. Kan. Apr. 3, 2002). Numerous federal courts have allowed errata sheet changes "even if the changes contradict the original answers or even if the deponent's reasons for making the changes are unconvincing."

Lugtig v. Thomas, 89 F.R.D. 639, 641 (N.D. Ill. 1981). *Also see* Poole v. Gorthon Lines AB, 908 F. Supp. 2d 778, 785 (W.D. La. 2012).

As previously set forth by the Honorable John Thomas Reid, "Fed. R. Civ. P. 30(e) permits any change in form or substance which the witness desires to make.  Thus, changed deposition answers of any sort are permissible, even those which are contradictory or unconvincing…" Luhman v. Dalkon Shield Claimants Tr., 1994 WL 542048, at *1 (D. Kan. Oct. 3, 1994). Judge Reid went on, "[A] judge cannot examine the sufficiency, reasonableness, or legitimacy of the reasons for the changes." *Id*.  As set forth in *Pepsico*, "the plain language of Rule 30(e) places no limitations on the types of changes that may be made by [a] deponent." Pepsico, 2002 WL 511506, at *2.

Allowing errata changes prior to trial "eliminates the likelihood of deviations from the original deposition in his testimony at trial; reducing surprises at the trial through the use of Rule 30(e) is an efficient procedure." Lugtig, 89 F.R.D. at 641.  "Both the original and amended answers shall be made part of the original transcript." Luhman, 1994 WL 542048 at *1.  With this, "the jurors should be able to discern the artful nature of the changes. For purposes of pre-trial motions, the plain language of Rule 30(e) should control."  Pepsico, 2002 WL 511506, at *2 (citing Elwell v. Conair, Inc., 145 F. Supp. 2d 79, 87 (D. Me. 2001)).

Plaintiff cites case law which suggests a more narrow interpretation of Rule 30(e) should be applied. In doing so, plaintiff relies on Price v. City of Wichita, 2014 WL 289453 (D. Kan. Jan. 27, 2014) and Burns v. Bd. of Cty. Comm'rs of Jackson Cty., 330 F.3d 1275, (10th Cir. 2003), but only hints at the analysis from these decisions in a footnote.  In *Price* and *Burns*, the Court applied "the *Burns* rule" in determining whether to permit a material change to deposition testimony. *See* Price, 2014 WL 289453 at *7; Burns, 330 F.3d at 1282. Under the *Burns* rule,

permissible changes under Rule 30(e) are determined by analysis of the following factors: (1) whether the deponent was cross-examined at the deposition; (2) whether the corrections were based on newly discovered evidence; and (3) whether the deponent's deposition testimony reflects obvious confusion, as opposed to indecisiveness or inconsistency, which necessitates a correction to clarify." Cargill Meat Sols. Corp. v. Premium Beef Feeders, LLC, 2015 WL 5821696, at *1 (D. Kan. Oct. 5, 2015). Indeed, this Court has specifically applied the *Burns* rule in analysis of this exact issue. *See* Kid Stuff Mktg., Inc v. Creative Consumer Concepts, Inc., No. 15-2620-JWL-KGG, 2016 WL 3743100 (D. Kan. July 13, 2016). *Also see* Lopez v. Dragone, No. 14-1045-EFM-KGG, 2016 WL 393729 (D. Kan. Feb. 2, 2016).  As discussed in more detail below, factors (2) and (3) of the *Burns* rule are clearly satisfied.

**ARGUMENT**

In all but one of the errata sheet changes made by Mr. Washburn, the primary issue is whether Ensign Services, Inc. provided clinical services to residents at Maple Hills Healthcare, Inc. Application of the *Burns* rule demonstrates the Court should apply the plain language and majority view of Rule 30(e) and deny plaintiff's Motion.

### I.    Errata Corrections were based on New Evidence

The sole document which sets forth the relationship between Ensign Services, Inc. and Maple Hills Healthcare, Inc. is the "Independent Consulting and Centralized Services Agreement (Non-Clinical)," which went into effect on November 17, 2015.  (Ex. (C), Independent Consulting and Centralized Services Agreement ("ICA")). Among other things, the ICA sets forth the services provided by Ensign Services, Inc. to Maple Hills Healthcare. This includes centralized accounting, payroll, legal, human resources, benefits, risk management, purchasing, technology, training, motivation, compliance, credit enhancement, and billing and collection

services.  (*Id.* at page 1, Recitals (B)). The ICA specifically states, "Facility desires to engage the services of [Ensign Services] to assist Facility personnel with the non-care and non-clinical aspects of Facility's operations and activities…" (*Id.* at page 1, Recitals (C)).  The agreement further states:

> "Consultant's duties shall specifically not include (i) the rendition of any direct care to patients or residents, (ii) the rendition of clinical advice for the care or treatment of any particular patient or resident …"

(*Id.*, at Section 2.2)

The ICA went into effect years prior to Mr. Washburn's involvement with Maple Hills Healthcare. (*Id.* at page 1). At the time of his deposition, Mr. Washburn had never reviewed the ICA and had no understanding as to the contents of the agreement. (Ex. (A), Washburn Depo., at 21:4-11).  Further, as of the time of Mr. Washburn's deposition, the ICA had not been requested via written discovery.  It was only after Mr. Washburn's deposition the ICA was first requested by plaintiff. *See* Plaintiff's Second Request for Production of Documents to The Ensign Group, Inc., Ensign Services, Inc., Gateway Healthcare, Inc., and Maple Hills Healthcare, Inc., Request No. (5).  Mr. Washburn did not review the ICA prior to his deposition.

Mr. Washburn's subsequent and recent review of the ICA constitutes new evidence for purposes of the *Burns* rule.  While he may have been aware of the existence of the ICA prior to his deposition, it was not something he had reviewed and certainly not something he was familiar with when testifying.  This document specifically defines the relationship between Maple Hills Healthcare and Ensign Services, Inc, including identification of the specific services provided by Ensign Services, Inc. Mr. Washburn gained a more clear and better appreciation of this issue following his review of the ICA *after his deposition*, which is specifically noted as the basis for his errata sheet changes.

## II.      Deponent's Testimony Reflects Obvious Confusion

A detailed read of the entire deposition transcript reveals Mr. Washburn was confused on

issues related to the services provided by Ensign Services, Inc. For example, the following

exchange occurred during Mr. Washburn's deposition:

> Q.    Okay. Let me ask it again then.  Who from Ensign Services, if anyone,
> ever came to visit your building during your time as administrator at
> [Maple Hills Healthcare]?
>
> A.    I really can't remember, but I know there were several folks that did come
> to help.
>
> Q.    What was their role, those people that visited? Were they nursing? Were
> they billing, HR?
>
> A.    I do recall, like you mentioned that HR came by.  We'd requested some
> help. Again, all these folks provided back-of-the-house services…  They
> didn't provide services – but they – direct services, but they did provide
> guidance and back-office help.
>
> So I'm sure we had folks from HR.  And I'm sure I had some from
> business office and therapy as well.  I'm sure they were there.  I just can't
> recall who and when and what times.  It was just too long ago.

(Ex. (A), Washburn Depo, at 41:25-42:19)

Later, Mr. Washburn testified Ensign Services provided "back-of-the-house services.

What I probably should clarify – I apologize – is they didn't provide any direct care.  They

provided back-office services."  (*Id*. at 43:4-7).  Mr. Washburn also stated Ensign Services

provided "all kind of backhouse services…" (*Id*. at 11:1).  The witness was specifically asked,

"What are the clinical services that [Ensign Services] provide?"  (*Id*. at 11:12-13).  Mr.

Washburn responded, "*I couldn't speak to that. I never really worked in that.*" (*Id*. at 11:14-15).

This testimony, in contrast to that cited in plaintiff's Motion, demonstrates clear

confusion concerning issues that Mr. Washburn had little involvement with, which occurred for a

short period of time over two years prior to his deposition.  As noted above, Mr. Washburn had not reviewed the ICA between Ensign Services, Inc. and Maple Hills Healthcare, Inc. prior to his deposition.  Mr. Washburn reviewed this document following his deposition and made changes on his errata sheet based on clarification provided by this document.

Plaintiff correctly states defense counsel did not examine Mr. Washburn on these issues at the time of his deposition.   While this is accurate, counsel in attendance at Mr. Washburn's deposition can attest that plaintiff's counsel left the video (Zoom) deposition before defense counsel had the opportunity to ask questions.  Near the end of the deposition, the court reporter specifically asked counsel in attendance what type of deposition transcript they would like to receive.  Notably, there is no response from plaintiff's counsel as he was no longer present.  (Ex. (A), Washburn Depo., at 48:9-22).  Plaintiff would be asserting foul play had further examination of the witness taken place after plaintiff's counsel abruptly left the deposition early.

Importantly, plaintiff's counsel has recently filed notices to take the depositions of an Ensign Services, Inc. corporate representative and a Maple Hills Healthcare, Inc. corporate representative. *See* Docs. 61 and 63.  Both notices include as deposition topics "The contents of the Independent Consulting and Centralized Services Agreement between Ensign Services, Inc. and Maple Hills Healthcare, Inc. between July 12, 2017 and August 8, 2017." *See* Doc. 61 at No. 20; Doc. 63 at No. 11. Defendants have every intention of producing a corporate representative to address the ICA, which presumably will include questions concerning the services provided by Ensign Services, Inc.

The remaining errata sheet change concerns the title of an individual.  (Ex. (B)).  This is not a "material change" to Mr. Washburn's deposition testimony, and therefore, there is no need to analyze this change under the *Burns* rule. *See* Summerhouse v. HCA Health Servs. of Kansas,

216 F.R.D. 502, 508 (D. Kan. 2003) ("A change is material if it bears on an essential element of a claim or defense.").

Plaintiff attempts to suggest there could be an issue concerning the timing of submission of Mr. Washburn's errata sheet, while at the same time admitting extensions were granted by plaintiff's counsel and the errata sheet was timely submitted within these extensions.  _See_ Doc. 65, footnote 5.  It is disingenuous for plaintiff's counsel to retroactively suggest the errata sheet was not timely submitted after agreeing to these extensions.  Indeed, plaintiff's counsel was specifically informed the witness required additional time to submit his errata sheet due to issues related to the health of the witness and the world-wide disruptions caused by COVID-19.

Regrettably, defense counsel must now address plaintiff's claim that submission of Mr. Washburn's errata sheet amounts to "dishonest and self-serving conduct" which could be a "sanctionable offense under Rule 11."  _See_ Doc. 65, footnote 6.  Asserting such allegations with no foundation is reckless and irresponsible.  As noted above, defense counsel had no involvement with the changes included within Mr. Washburn's errata sheet.  Defense counsel did not, in any way, direct, suggest, or make errata sheet changes for Mr. Washburn.

### CONCLUSION

The majority interpretation of Rule 30(e) should apply and, after analysis of the factors set forth in the _Burns_ rule, plaintiff's Motion should be denied.  The errata changes made by Mr. Washburn followed his review of new evidence and his original testimony reflects clear confusion on the issue.  The relationship between Maple Hills Healthcare and Ensign Services is memorialized in the Independent Consulting and Centralized Services Agreement (Non-Clinical).  If Mr. Washburn failed to make these changes following his review of this agreement, plaintiff would claim unfair surprise at trial if he attempted to clarify.  Mr. Washburn's errata

sheet changes memorialize his attempt to provide plaintiff with notice of these misstatements well in advance of trial.  For these reasons, plaintiff's Motion to Strike should be denied.

Respectfully submitted:

*/s/ Bret A. Clark*

| Todd A. Scharnhorst | KS # 16863 |
| Bret A. Clark | KS # 24984 |

SCHARNHORST AST KENNARD GRIFFIN, P.C.
1100 Walnut, Suite 1950
Kansas City, Missouri 64106-2143
T:      (816) 268-9400
F:      (816) 268-9409
E:      tscharnhorst@sakg.com
          bclark@sakg.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The foregoing was served via electronic mail on the 22nd day of May, 2020, on

the following:

Jonathan Steele
THE STEELE LAW FIRM
2345 Grand Blvd., Suite 750
Kansas City, Missouri 64108
T:      (816) 754-6473
E:      jonathan@jsteelelawfirm.com

*Attorney for Plaintiff*

C. Zachary Vaugh
Shannon Rulo
WIEDNER & MCAULIFFE, LTD.
101 S. Hanley Roard, Suite 1450
St. Louis, Missouri 63105
T:      (314) 721-3400
E:      czvaughn@wmlaw.com
        smrulo@wmlaw.com

*Attorneys for Defendants Post Acute Medical,*
*LLC & Heartland Rehabilitation Hospital,*
*LLC d/b/a Rehab Hospital of Overland Park*

*/s/ Bret A. Clark*
*Attorney for Defendant*