# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| GENE FINKE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )  Case No. 2:19-cv-02056 |
| | ) |
| THE ENSIGN GROUP, INC. *et al* | ) |
| | ) |
| Defendants. | ) |
| | ) |

## ORDER GRANTING MOTION TO STRIKE
## RULE 30(E) ERRATA SHEET

Now before the Court is Plaintiff's "Motion to Strike Laird Washburn's Rule 30(e) Errata Sheet." (Doc. 65.) After careful review of the submissions of the parties, the Court **GRANTS** Plaintiff's motion.

## BACKGROUND

This is a medical malpractice case. Plaintiff fell and sustained a left distal fibula fracture and medial malleolus fracture during physical therapy at his nursing facility, Healthcare Resort of Shawnee. (Doc. 4.) Plaintiff claims The Ensign Group, Inc., Ensign Services, Inc., Gateway Healthcare, Inc., and the Healthcare Resort of Shawnee are liable for the operation, management and negligence at the nursing home, and thus liable for Plaintiff's injuries. (Doc. 4.) Defendants claim

1

the Ensign Group, Inc., Ensign Services, Inc., and Gateway Healthcare, Inc. were not involved in the care provided to plaintiff.  (Doc. 15.)

Defendants' errata sheet requests to change the following seven responses from the witness's deposition transcript:

| Page/line | Original Testimony | Corrected Testimony | Stated Reason for Change |
|---|---|---|---|
| Pg. 11, ln 9-11 | 7. Q. Do they [Ensign Services] provide any sort of<br>8. clinical consulting?<br>9. A. They'll provide clinical -- I wouldn't call<br>10. it "consulting," but they do have clinical services.<br>11. Yes. | No, it's my understanding, according to contract, Ensign Services provides the facility specific nonclinical back office services." | Response was incorrect based on my subsequent review of the Independent Consulting Services Agreement (ICSA) between ESI and the Facility. |
| Pg. 11, ln 14-15 | 12. Q. What are -- What are the clinical services 13. that they provide?<br>14. A. I couldn't speak to that. I never really 15. worked in that. | "I couldn't speak to that" I'm not aware of any." | Clarification of response. |
| Pg. 18, ln 11-14 | 1. Q. So was there anyone from Ensign Services<br>2. that said, hey, you -- you know, we have a contract<br>3. with these four nursing homes in Kansas. We'd like<br>4. y'all to get together and talk about best practices?<br>5. Anything like that happen?<br>8. THE WITNESS:· I mean, we had resources from<br>9. Ensign Services.· So, yes, at times, Ensign Services<br>10. would say, hey, some of you are having the same issues.<br>11. And so they would say, yeah, let's gather together and<br>12. talk about those issues.· So, yes, that would happen at<br>13. times.· The main person that would direct this would<br>14. be -- would have been Dave Jorgensen. | "and it would be recommended that the facilities get together and talk about those issues." | Clarification of response. |
| Pg. 18, ln 22 | 19. Q. Was there ever any individuals from Ensign | "yes" should read – "individuals, | Clarification of response. |

2

|  | | | |
|---|---|---|---|
|  | 20. Services that would come into the building while you<br>21. were administrator at The Healthcare Resort of Shawnee?<br>22. A. Yes | who we knew as resources, would come to the building but I'm not sure if they were employed by Ensign Services." |  |
| Pg. 19, ln 9-12 | 3. Q. What -- what -- That's fine.· What – what<br>4. positions -- What titles of positions of people from<br>5. Ensign Services would come into your building during<br>6. your time as administrator?<br>7. A. Well, it would work that if we needed<br>8. something or wanted some help, then we would reach out<br>9. to a specific area, whether it was HR or accounting or<br>10. nursing.· And whichever department felt like they<br>11. needed some additional assistance or guidance, they<br>12. would reach out.· Those services are provided. | Delete "…or nursing." | Clarification of response based on review on ICSA. |
| Pg. 19, ln 24-25 | 20. Q. So nobody at Ensign Services had titles?<br>23. THE WITNESS:· They just didn't have titles.<br>24. They -- They worked -- They were in nursing.· They were<br>25. in HR.· They were -- That's where --· there wasn't a· 1. title.· They were -- We called -- | Delete "they were in nursing." | Clarification of response based on review of ICSA. |
| Pg. 24, ln 24 | 19. Q. Do you know who Chris Christensen is?<br>20. A.· · Do you mean Christopher?<br>21. Q. Sure.· Christopher Christensen.<br>22. A. Yes.<br>23. Q. Who's that?<br>24. A. He's the CEO of -- of Ensign Services. | "He was the CEO" | Clarification of response. |

(*See* Doc. 65-2.)

Plaintiff brings the present "Motion to Strike Laird Washburn's Rule 30(e) Errata Sheet," arguing the requested changes are material and improper. (Doc. 65.) Defendants claim the changes are for clarification of response based on the

3

witness's subsequent review of ICSA.  (Doc. 66-2, at 3.)  The witness contends his responses were "incorrect based on subsequent review of the Independent Consulting Services Agreement (ICSA) between ESI and the Facility."  (*Id.*)

## DISCUSSION

Federal Rule of Civil Procedure 30(e) governs witness changes to deposition transcripts.  The rule provides, in relevant part, that

> [o]n request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:
>
> (A)   to review the transcript or recording; and
>
> (B)   if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

Fed.R.Civ.P. 30(e).

This District Court defines Rule 30(e) as "limiting the scope of changes permitted" under the federal rules to the correction of transcription errors. ***Summerhouse v. HCA Health Services of Kansas***, 216 F.R.D. 502, at 504-05 (D. Kan. 2003) (internal citations omitted).  Thus, this view "does not authorize changes because the deponent lied, misspoke, or otherwise wants to change or clarify his testimony."  *Id.*

This District further explains the purpose and scope of Rule 30(e) in the case of ***Cargill Meat Solutions Corp. v. Premium Beef Feeders, LLC***:

4

> The purpose of Rule 30(e) is obvious. Should the reporter make a substantive error, i.e., he reported 'yes' but I said 'no,' or a formal error, i.e., he reported the name to be 'Lawrence Smith' but the proper name is 'Laurence Smith,' then corrections by the deponent would be in order. The Rule cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination.

No. 13-11168-EFM-TJJ, 2015 WL 5821696, at *1 (D. Kan. Oct. 5, 2015) (quoting ***Garcia v. Pueblo Country Club***, 299 F.3d 1233, 1242 (10th Cir. 2002).

It is uncontested that the witness's changes are not due to typographical errors. Therefore, the issue before the Court is whether the requested changes are mere corrections or, rather, amount to material changes to the testimony.

The 10th Circuit lays out the framework to be used when examining whether a material change is permitted.

> If a change is material, which is defined as one that bears on an essential element of a claim or defense, whether it is permitted under Rule 30(e) is determined by examining the following factors, known as 'the Burns rule': (1) whether the deponent was cross-examined at the deposition; (2) whether the corrections were based on newly discovered evidence; and (3) whether the deponent's deposition testimony reflects obvious confusion, as opposed to indecisiveness or inconsistency, which necessitates a correction to clarify.

***Burns v. Board of Cty. Comm'rs of Jackson Cty***, 330 F.3d 1275, 1282 (10th Cir. 2003). The Court finds the Defendant's changes to be material, therefore, it is necessary to apply the ***Burn's*** Rule to the witness's suggested changes.

    a. <u>The witness was not cross-examined at the time of the deposition</u>

Defendants claim that Plaintiff's counsel left the video deposition (via Zoom) before they had the opportunity to cross-examine the witness. (Doc. 66 at 7.) This is not, however, recorded in deposition transcript. Rather, the transcript shows Defendants were given the opportunity to cross-examine the witness and chose not to do so. (Doc. 65-1, at pg. 49, ln. 18-19.) Consequently, factor (1) of the ***Burn's*** rule is not met.

    b. <u>The witness's corrections are not based on newly discovered evidence.</u>

According to Defendants, at the time of the deposition, the witness "had never reviewed the Independent Consulting and Centralized Services Agreement ('ICA') and had no understanding as to the contents of the agreement." (Doc. 66, at 5.) Consequently, Defendants base the witness's errata corrections on discovering new evidence. (Doc. 66, at 4.) The Court disagrees. Though the ICA was not entered as an exhibit or produced through discovery, as the administrator at Maple Hills Healthcare, the witness should have been aware of the ICA. (Doc.

66, at 5.) Reviewing the document does not constitute newly discovered evidence. Therefore, factor (2) of the ***Burn's*** rule is not met.

Moreover, the "corrected" answers are simply nonresponsive. The witness was not asked what the ICSA required or provided. He was asked what Ensign Services did. The answer that Ensign services came to the facility to help with nursing issues is not "corrected" by information from the ICSA, whether or not that agreement required such assistance.

c. <u>The witness's testimony does not reflect obvious confusion.</u>

Defendants contend the witness's testimony is equivocal and demonstrates clear confusion. (Doc. 66, at 2.) The Court does not agree. The testimony exhibits no examples of obvious confusion on behalf of the deponent such as would necessitate clarification. *See **Cargill Meat Solutions***, 2015 WL 5821696, at *1. Rather, the changes at issue constitute the witness attempting to "rewrite portions of a deposition." ***Rios v. Welch***, 856 F.Supp. 1499, 1502 (D. Kan. 1994), *aff'd* 67 F.3d 1543 (10th Cir. 1995). Consequently, factor (3) of the ***Burn's*** rule is also not met.

For the reasons set forth above, the Court finds the material changes Defendants seek to make do not satisfy the ***Burn's*** rule for determining whether, under Rule 30(e), Defendants' witness may alter what he said under oath.

Plaintiff's motion is **GRANTED,** and the proposed deposition corrections are hereby **stricken**.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas, on this 9th day of June, 2020.

                                       S/ KENNETH G. GALE
                                       Kenneth G. Gale
                                       United States Magistrate Judge