IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**GENE FINKE,**

        **Plaintiff,**

v.

**POST ACUTE MEDICAL, LLC, et al.,**

        **Defendants.**

Case No. 19-2056-DDC-KGG

**MEMORANDUM AND ORDER**

    Defendants have filed a Motion for Partial Summary Judgment (Doc. 106) asking the court to rule as a matter of law that plaintiff cannot recover punitive damages. *See* Doc. 106; Doc. 107 (Mem. in Supp.). Plaintiff filed a Response (Doc. 108). And defendants filed a Reply (Doc. 109). For the reasons explained below, the court grants defendants' motion. The court begins by reciting the legal standard governing summary judgment.

**I.**    **Legal Standard**

    Federal Rule of Civil Procedure 56 permits a party in federal court to move for summary judgment. Fed. R. Civ. P. 56(a). The rule explains that the moving party should "identify[ ] each claim or defense—or the part of each claim or defense—on which summary judgment is sought." *Id.* "There is no doubt that a court may grant, and a party may seek, summary judgment as to one party or one claim, leaving other claims and other parties to be addressed at a later point in the litigation." *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 606 (7th Cir. 2015).

Summary judgment is appropriate if the moving party demonstrates that "no genuine dispute" exists about "any material fact" and that it is "entitled to judgment as a matter of law." *Id.*; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  When the court applies this standard, it views the evidence and draws inferences in the light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).  An issue of "material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on the issue.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And, an issue of fact is "material" if it has the ability to "affect the outcome of the suit under the governing law[.]"  *Id.*

The party moving for summary judgment bears the initial burden of showing "the basis for its motion."  *Celotex Corp.*, 477 U.S. at 323; *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (explaining that the moving party bears "'both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law'" (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002))).  A summary judgment movant can satisfy this burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case."  *Celotex Corp.*, 477 U.S. at 325; *see also Kannady*, 590 F.3d at 1169 (explaining that, to meet its summary judgment burden, the moving party "need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim" (citation and internal quotation marks omitted)).

If the moving party satisfies its initial burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 250 (citation and internal quotation marks omitted); *see also Kannady*, 590 F.3d at 1169 ("If the movant carries [the] initial burden, the nonmovant may not rest on its pleadings, but must bring forward

specific facts showing a genuine issue for trial [on] those dispositive matters for which it carries the burden of proof." (citation and internal quotation marks omitted)). To satisfy this requirement, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (citation and internal quotation marks omitted). When deciding whether the parties have shouldered their summary judgment burdens, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

With this standard in mind, the court considers this case's uncontroverted facts.

## II.   Uncontroverted Facts[1]

Plaintiff Gene Douglas Finke is a 78-year-old man living in Shawnee, Kansas. Doc. 107-1 at 1–2 (Finke Dep.). On August 8, 2017, Mr. Finke fell and fractured his left distal fibula and medial malleolus. Doc. 98 at 2 (Pretrial Order ¶ 2.a.). He then was taken to Rehabilitation Hospital of Overland Park for residential care beginning on October 26, 2017. *Id.* at 2 (Am. Compl. ¶ 3). The facility is owned and operated by defendants. Doc. 4 at 5–6 (Am. Compl. ¶¶ 26, 31). Megan Hall served as the facility's Director of Therapy Services. Doc. 108-5 at 5 (Hall Dep.). She supervised therapy personnel, including Nancy Fronczak. *Id.*; Doc. 107-2 at 1 (Fronczak Dep.).

Mr. Finke was unable to stand and transfer from his wheelchair to his bed unassisted. Doc. 107-2 at 2 (Fronczak Dep.). On October 27, 2017, Mr. Finke needed to move from his wheelchair to his hospital bed. Doc. 98 at 2 (Pretrial Order ¶ 2.a.). After several failed attempts,

---

[1]   At the summary judgment stage, the court views the facts and draws reasonable inferences in the light most favorable to the non-moving party. *Scott*, 550 U.S. at 378. Here, that favored party is plaintiff.

Doc. 107-2 at 2–4 (Fronczak Dep.), Ms. Fronczak suggested using a Hoyer lift, given patient comfort and its use in the past, *id.* at 4–5 (Fronczak Dep.). Ms. Fronczak testified that one of her responsibilities required her to ensure that plaintiff's condition did not get worse during his transfer on October 27, 2017. Doc. 108-1 at 61 (Fronczak Dep.). She also testified that her job required her to keep plaintiff safe or "as safe as possible" during his transfer via portable lift. *Id.* at 55, 65 (Fronczak Dep.).

Mr. Finke already had been transferred by a Hoyer lift hundreds of times. Doc. 107-1 at 3 (Finke Dep.). And on October 27, 2017 when Mr. Finke was strapped into the Hoyer lift, he did not notice anything different about the strapping or recall anyone alerting him to known trouble. *Id.* at 4 (Finke Dep.). Ms. Hall expected therapy staff to ensure Mr. Finke's bed was high enough to allow the base of the portable Hoyer lift to fit underneath before initiating his transfer on October 27, 2017. Doc. 108-5 at 28 (Hall Dep.). Ms. Hall believes that therapy staff failed to ensure, before initiating Mr. Finke's transfer on October 27, 2017, that (1) Mr. Finke's bed was high enough to allow the base of the portable Hoyer lift to fit underneath, and (2) the area where the Hoyer base was going to fit underneath Mr. Finke's bed was free from obstructions. *Id.* at 31–32 (Hall Dep.).

Ms. Fronczak reports that the Hoyer lift was not "in a good position" and plaintiff exhibited anxiety before the transfer began. Doc. 107-2 at 6 (Fronczak Dep.). Ms. Fronczak testified she and Nurse Graham continued with plaintiff's transfer, despite him vocally telling them he was uncomfortable. Doc. 108-1 at 63 (Fronczak Dep.). At some point during the transfer, Ms. Fronczak gave Mr. Finke the controls to the Hoyer lift. *Id.* at 54 (Fronczak Dep.). As the Hoyer began to lift, plaintiff's right leg touched the lift power box. Doc. 107-1 at 4 (Finke Dep.); Doc. 107-2 at 8 (Fronczak Dep.). Ms. Fronczak reported that plaintiff called out in

discomfort, and as a result she recommended the Hoyer be lowered while the nurse attempted to move the Hoyer into place over the bed. Doc. 107-2 at 8 (Fronczak Dep.). As a result of the contact with the power box, plaintiff's leg had swollen, which the caregivers immediately treated with ice packs. Doc. 107-1 at 5–6 (Finke Dep.). The swelling on plaintiff's leg eventually became a hematoma that ruptured. *Id.* at 7–8 (Finke Dep.).

Dr. Mongrain opines that, based on facts stated in Ms. Fronczak's incident report, defendants deviated from the standard of care and created an unreasonably safe environment. Doc. 107-3 at 69 (Mongrain Dep.). Plaintiff's expert, Dr. Kirby, also opines that defendants deviated from the standard of care based on the improperly performed lift transfer which resulted in plaintiff's leg injury. *See* Doc. 107-4 at 14–15 (Kirby Dep.). Ms. Fronczak testified that she would change the manner she had used to transfer plaintiff from his wheelchair to his bed via portable Hoyer lift on October 27, 2017. Doc. 108-1 at 53 (Fronczak Dep.). And she testified that she should not have provided plaintiff the controls to the portable Hoyer lift during the transfer. *Id.* at 54 (Fronczak Dep.).

The court now turns to the parties' arguments whether a triable question remains about the unavailability of punitive damages.

### III. Discussion

Defendants seek summary judgment on just one issue: whether punitive damages are out of Mr. Finke's reach as a matter of law.[2] The parties agree that Kansas law governing damages applies here. *See* Doc. 107 at 7; Doc. 108 at 16.[3] By Kansas statute, in "any civil action where

---

[2] "Under Rule 56, defendant may file a motion for summary judgment asserting lack of evidence to support a claim for punitive damages." *D.M. by & through Morgan v. Wesley Med. Ctr. LLC*, No. CV 18-2158-KHV, 2019 WL 2448574, at *7 (D. Kan. June 12, 2019) (citing Fed. R. Civ. P. 56).

[3] The parties' agreement on this issue comports with governing choice of law rules. A "federal court sitting in diversity must apply the choice of law provisions of the forum state in which it is sitting."

5

claims for exemplary or punitive damages are included, the plaintiff shall have the burden of proving, by clear and convincing evidence in the initial phase of the trial, that the defendant acted toward the plaintiff with willful conduct, wanton conduct, fraud or malice." Kan. Stat. Ann. § 60-3701(c); *see also D.M. by & through Morgan v. Wesley Med. Ctr., LLC*, 487 F. Supp. 3d 1071, 1078 (D. Kan. 2020) (explaining availability of punitive damages under Kansas law).

"For their acts to be wanton, defendants must [1] realize the imminence of danger and [2] recklessly disregard and be indifferent to the consequences of their act." *D.M.*, 487 F. Supp. 3d at 1078 (citation and internal quotation marks omitted). When considering the "realize imminent danger" prong, the court "asks whether based on defendants' knowledge of existing conditions, they were aware that their action or inaction 'would likely or probably result' in the injury or other known risk or complication." *Id.* (first quoting *Holt v. Wesley Med. Ctr., LLC.*, No. 00-1318-JAR, 2004 WL 1636574, at *8 (D. Kan. July 19, 2004); then citing *Reeves v. Carlson*, 969 P.2d 252, 256–57 (Kan. 1998)).

For the "reckless disregard and indifference" prong, "Kansas law does not require plaintiff to establish 'a formal and direct intention to injure any particular person. It is sufficient if [ ] defendant evinced that degree of indifference to the rights of others which may justly be characterized as reckless.'" *D.M.*, 487 F. Supp. 3d at 1078 (quoting *P.S. ex rel. Nelson v. The Farm, Inc.*, 658 F. Supp. 2d 1281, 1303 (D. Kan. 2009)). But recklessness "is more than mere negligence and requires conduct which shows 'disregard of or indifference to consequences,

---

*Ace Prop. & Cas. Ins. Co. v. Superior Boiler Works, Inc.*, 504 F. Supp. 2d 1154, 1158 (D. Kan. 2007) (citation and internal quotation marks omitted); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). This court sits in the Sunflower State and thus applies Kansas choice of law provisions. Kansas courts follow the Restatement (First) of Conflict of Laws. *Brenner v. Oppenheimer & Co. Inc.*, 44 P.3d 364, 375 (Kan. 2002). Under the First Restatement, the "right to exemplary damages is determined by the law of the place of wrong." Restatement (First) of Conflict of Laws § 421 (1934). Here, that place is Kansas, so Kansas law governs the punitive damages question.

under circumstances involving danger to life or safety of others.'" *Id.* (quoting *P.S. ex rel. Nelson*, 658 F. Supp. 2d at 1303). The court "typically reserves the question of wantonness for the jury—only when reasonable persons 'could not reach differing conclusions from the same evidence may the issue [of wantonness] be decided as a question of law.'" *Id.* (quoting *Danaher v. Wild Oats Mkts., Inc.*, 779 F. Supp. 2d 1198, 1213 (D. Kan. 2011)).

Here, defendants assert that plaintiff fails to demonstrate any genuine issue of material fact that would allow a reasonable jury to find that defendants' actions were anything more than simple negligence. So, according to defendants, plaintiff fails to support his claim for punitive damages and that claim merits dismissal as a matter of law. *See* Doc. 107 at 1–2. Plaintiff objects, asserting that the punitive damages question is unfit for summary judgment because a reasonable juror could find that defendants realized imminent danger and were reckless and indifferent to the consequences of their actions. Doc. 108 at 1.

Plaintiff offers two reasons why the summary judgment record doesn't foreclose a reasonable finding of "wanton conduct" meriting punitive damages under Kansas law. *See id.* at 17. The court considers each one, below.

### A. Whether Defendants' Knowledge of Consequences of Their Actions During Plaintiff's Transfer Supports a Reasonable Finding or Inference of Wanton Conduct

Plaintiff asserts that "defendants knew or should have known that multiple actions taken during Plaintiff's transfer on October 27, 2017 were likely to cause him injury." *Id.* Plaintiff tries to root this conclusion in the record. *See id.* at 17 & n. 1–2 (citing PAUMF ¶¶ 3–4, 6–13). He highlights evidence that could support a reasonable finding that defendants committed several

acts or omission they shouldn't have.[4]  Plaintiff asserts that "[p]lainly, these actions constitute reckless indifference to Plaintiff's safety."  *Id.* at 17.  The court disagrees.  The cited evidence might support a reasonable finding or inference of *negligence*, but Kansas law demands more before granting access to punitive damages.  *See* Kan. Stat. Ann. § 60-3701.

Plaintiff fails to clear this higher hurdle.  The parts of the record that plaintiff identifies to support his first argument provide nothing from which a reasonable juror could find or infer that defendants realized the *imminence* of danger, rather than merely the possibility of danger.  *See D.M.*, 487 F. Supp. 3d at 1078 (discussing wantonness for purposes of punitive damages under Kansas law); *Reeves*, 969 P.2d at 256–57 (explaining that "wanton conduct" involves awareness "that injury or death will likely or probably result").  The court is mindful that it must view the facts and draw reasonable inferences in the light most favorable to the non-movant here, *Scott*, 550 U.S. at 378, but the leap here from mere possibility to imminence is no reasonable inference.  This evidence that plaintiff showcases cannot yield a reasonable finding of wanton conduct.  The court now turns to plaintiff's second argument.

### B. Whether Handing the Hoyer Lift Controls to Plaintiff Supports a Reasonable Finding or Inference of Wanton Conduct

*Second*, plaintiff asserts that "defendants' decision to permit Plaintiff to operate the controls of the portable lift—on its own—constitutes wanton conduct."  Doc. 108 at 18.  Plaintiff attempts to support this conclusion with evidence showing that giving plaintiff the controls to the Hoyer lift during the transfer could cause harm and was something defendants should not have

---

[4]  *See* Doc. 108 at 17 & n. 1–2 (first discussing Fronczak's failure to keep plaintiff as safe as possible during his transfer (first citing Doc. 108-1 at 65 (Fronczak Dep.); then citing Doc. 108-5 at 27–28 (Hall Dep.)); then citing Doc. 108-1 at 65 (Fronczak Dep.); then citing Doc. 108-1 at 56 (Fronczak Dep.); then discussing transferring plaintiff while he was agitated (first citing Doc. 108-5 (Hall Dep.); then citing Doc. 108-1 at 63 (Fronczak Dep.)); then noting failure to check bed height and clear bed area before transfer (citing Doc. 108-5 at 31–32 (Hall Dep.)); then noting Fronczak's retrospective testimony that she would have conducted transfer differently (citing Doc. 108-1 at 53–54 (Fronczak Dep.))).

done.[5]  But plaintiff's second argument against summary judgment suffers from the same limitations as his first.  He identifies evidence capable of supporting a reasonable finding or inference of negligence, but not of a "malicious, vindictive or willful and wanton invasion" of plaintiff's rights.  Doc. 108 at 16 (citation omitted).  Plaintiff submits evidence capable of supporting a reasonable finding that defendants acted with knowledge that giving plaintiff the reins to the lift *could* produce an injury.  Doc. 108 at 18 (citing Doc. 108-4 at 75–76 (Mongrain Dep.)); Doc. 108-4 at 76 (Mongrain Dep.) (agreeing that defendants "should . . . have known that by handing [plaintiff] the control they were making that transfer more dangerous than it otherwise would have been").  But he identifies no evidence showing that defendants knew "that their action or inaction would *likely or probably* result in the injury or other known risk or complication."  *Id.* at 16 (emphasis added) (citations and internal quotation marks omitted) (emphasis added).  Given the absence of such evidence, no reasonable juror could find or infer that defendants realized "the imminence of danger" critical to a finding of wanton conduct.  *D.M.*, 487 F. Supp. 3d at 1078 (citation and internal quotation marks omitted).  The evidence plaintiff identifies to support his second argument against summary judgment thus likewise fails to reveal a triable question whether defendants' conduct could support a punitive damages award.

Plaintiff bears the burden to respond to defendants' summary judgment motion by bringing forward specific facts showing a genuine issue for trial on the question whether punitive

---

[5]  *See* Doc. 108 at 18 (first discussing Dr. Mongrain's testimony that "defendants knew or should have known that handing Plaintiff the controls to the portable Hoyer lift during his transfer on October 27, 2017 could result in an injury and was dangerous" (citing Doc. 108-4 at 75–76 (Mongrain Dep.)); then discussing Fronczak's testimony admitting that she should not have provided the controls to the portable Hoyer lift to plaintiff during the transfer (citing Doc. 108-1 at 53 (Fronczak Dep.)); then quoting Dr. Mongrain's testimony that handing the lift controls to plaintiff was "'unreasonably unsafe and deviated from the standard of care'" and should not have been done (quoting Doc. 108-6 at 13 (Mongrain Report))).

damages are off the table. After considering the evidence plaintiff highlights in the light most favorable to him, the court concludes that he fails to shoulder that burden. Defendants are entitled to summary judgment against plaintiff's claim for punitive damages.

## IV. Conclusion

Defendants move the court to grant summary judgment against plaintiff's claim for punitive damages. Plaintiff opposes summary judgment, asserting that a reasonable juror could infer from the record that defendants' conduct was wanton and thus satisfies the threshold for punitive damages under Kansas law. But plaintiff fails to buttress that assertion with sufficient reasoning. He discusses several parts of the record from which a reasonable factfinder could infer negligence. But plaintiff directs the court to no evidence in the summary judgment record that can support a reasonable finding or inference that defendants' conduct was a malicious, vindictive, or willful and wanton invasion of plaintiff's rights necessary to award punitive damages. So, defendants are entitled to summary judgment against plaintiff's claim for punitive damages. The court grants defendants' Motion for Partial Summary Judgment.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motion for Partial Summary Judgment (Doc. 106) is granted.

**IT IS SO ORDERED.**

**Dated this 28th day of April, 2021, at Kansas City, Kansas.**

                                                    **s/ Daniel D. Crabtree**
                                                    **Daniel D. Crabtree**
                                                    **United States District Judge**